**SO ORDERED.**

**SIGNED this 4th day of April, 2022.**



*Catharine R Aron*
_____
UNITED STATES BANKRUPTCY JUDGE

---

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**DURHAM DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CHRISTOPHER LAVON VEREEN | ) | Bankruptcy Case No. 20-80517 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| ————————————————— | ) | |
| | ) | |
| UNITED STATES SMALL BUSINESS | ) | |
| ADMINISTRATION, | ) | |
| | ) | AP No. 21-09001 |
| Plaintiff, | ) | |
| and | ) | |
| | ) | |
| WILLIAM P. MILLER, UNITED STATES | ) | |
| BANKRUPTCY ADMINISTRATOR and | ) | |
| JOHN PAUL H. COURNOYER, | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| Plaintiff-Intervenors, | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER LAVON VEREEN | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This adversary proceeding came on before the Court for trial in Greensboro, North

Carolina on February 23, 2022, on a Complaint Objecting to Discharge (the "Complaint" or

1

"Objection to Discharge") filed by the United States Small Business Administration (the "SBA")

on February 5, 2021. On February 16, 2021, John Paul Cournoyer, Chapter 7 Trustee (the

"Trustee") filed a motion to intervene [Doc. #5] and on February 18, 2021, the United States

Bankruptcy Administrator (the "BA") filed a similar motion [Doc. #8]. On March 16, 2021, the

Court entered Orders allowing the parties to intervene as to Count II of the Complaint to deny

the Defendant's discharge under 11 U.S.C. § 727(a)(4)(A) [Doc. #18 & 19]. At the hearing,

Robert E. Price, Jr. appeared on behalf of the BA and Robert Lewis, Jr. appeared on behalf of

Christopher Vereen (the "Debtor" or the "Defendant"). The following parties also appeared and

gave testimony: John Paul Cournoyer, Trustee and plaintiff-intervenor, the Debtor, and Will

Lilly, president of Iron Horse Auction Company. Following the trial, and upon consideration of

the Complaint, the responses thereto, the arguments of counsel, the live testimony of the Trustee,

the Debtor, and Will Lilly, and for the reasons that follow, the Court will grant the Objection to

Discharge and deny the Debtor's discharge in the bankruptcy case pursuant to 11 U.S.C. §

727(a)(5).

## **FINDINGS OF FACT**

Prior to filing bankruptcy, the Debtor obtained a COVID-19 Economic Injury Disaster

Loan (the "SBA Loan") in the amount of $150,000.00 from the SBA on May 30, 2020. The

Debtor admitted that in his application for the SBA Loan that he represented he had 10

employees, his gross business revenues for the 12 months preceding the COVID-19 disaster were

$2,000,000.00, and that his cost of goods sold for the 12 months prior to the disaster were

$856,000.00. None of these statements were accurate. The Debtor used $71,000.00 from the

SBA Loan proceeds to purchase a 2012 Bentley Mulsanne and used $36,000.00 to purchase a

1999 Sterling truck and a 1999 dump truck.[1]

The Debtor filed a Chapter 7 bankruptcy petition later that year on November 12, 2020. Due to the vast discrepancies between the SBA Loan application and the Debtor's bankruptcy schedules, along with other numerous issues with the Debtor's schedules, the SBA filed this complaint on February 5, 2021 seeking to determine the SBA Loan debt to be non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(B) and to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A). Both the BA and the Trustee moved to intervene in the adversary proceeding as plaintiff-intervenors as to the 11 U.S.C. § 727 count only and their motions were granted by orders dated March 16, 2021 [Doc. #18 & 19]. On July 27, 2021, a consent judgment between the SBA and the Debtor was entered in which the SBA and Debtor agreed that the SBA Loan debt is non-dischargeable, and the SBA was dismissed as a party to the adversary proceeding [Doc. # 37].

The BA and the Trustee moved forward and continued to trial as plaintiff-intervenors in this adversary proceeding. At the hearing, in addition to making their case under 11 U.S.C. § 727(a)(4)(A), the BA and Trustee orally amended their pleadings pursuant to Federal Rule of Civil Procedure 15(d) to include a claim under 11 U.S.C. § 727(a)(5) for the failure to explain satisfactorily the loss of assets, specifically, Debtor's Sterling truck, the dump truck, and other furniture. The Court allowed the amendment as to the Sterling truck and the dump truck (the "Trucks"), but not as to the furniture as the Debtor had explained adequately the disposition of the furniture.[2]

---

[1] In his initial schedules, the Debtor failed to list his ownership interest in the Sterling truck and the dump truck. The Debtor's amended schedules listed the value of the 1999 Sterling truck at $20,000.00 and the value of the 1999 dump truck at $16,000.00. While the Debtor scheduled the Sterling truck and dump truck as having a model year 1999, the Plaintiffs' admitted trial exhibit H, which consists of receipts of purchase for the Trucks, indicates that the dump truck is a model year 1997 and the Sterling truck is a model year 2003.

[2] The Debtor testified that he had purchased the furniture in question at an auction in Texas. Upon inspecting the furniture in person, he testified that some of it was not worth transporting back to North Carolina and so it was left

At the hearing, the Debtor testified that in July 2020 he purchased the Trucks with the SBA Loan proceeds. The Trucks were purchased through an online auction as the Trucks were located in Texas. Following the auction, the Debtor flew to Texas to sign some paperwork related to the auction and to personally inspect the Trucks before returning to North Carolina. The Debtor testified that upon returning home, he engaged Everette & Sons Mobile Truck Repair ("Everette & Sons") to provide any needed repairs to the Trucks and transport them from Texas to North Carolina. According to the Debtor's testimony, Everette & Sons did in fact transport the Trucks to North Carolina and began work on the Trucks prior to his filing bankruptcy. Before Everette & Sons would do further maintenance on the Trucks, they indicated to the Debtor that they would need to be paid for the work done up to that point which the Debtor testified amounted to $38,000.00.[3] The Debtor was unable to pay the $38,000.00. According to the Debtor's testimony, he never received notice that Everette & Sons was going to dispose of the Trucks and does not know what happened to the Trucks. According to the Debtor, he never saw the Trucks in person but for the initial viewing in Texas prior to transport.

After the Debtor filed for bankruptcy and amended his schedules to add the Trucks, the Trustee undertook efforts to locate them. The Trustee testified that the Debtor had indicated that the Trucks were in the possession of Everette & Sons and that they had possibly "junked" the Trucks. The Debtor provided the Trustee with a telephone number and a physical address for Everette & Sons. The physical address provided was a residential address, but the Debtor testified that a lot of people in that area work out of their garages and backyards.[4] The Trustee

in Texas and disposed of. The few things he did transport to North Carolina were given to his employees as gifts. The furniture was not of significant value.
[3] The Debtor's amended schedules listed Everette & Sons Mobile Truck Repair in Chadbourn, North Carolina as having a claim for $38,000.00 for picking up the vehicles in Texas, transporting them to North Carolina, and working on both Trucks. Everette & Sons has not filed a proof of claim in this bankruptcy case.
[4] The Debtor is a former resident of Chadbourn, North Carolina.

attempted to contact Everette & Sons a number of times via the phone number provided by the Debtor and the calls were never answered. Further, when the calls went to voicemail, there was a message that the inbox was full and the Trustee was unable to ever leave a voicemail message for Everette & Sons. The Trustee also wrote and mailed a letter to the physical address of Everette & Sons that was provided by the Debtor, but never received a response to the letter. The Trustee was unable to find anything about the company online to indicate that the company did in fact exist. In further efforts to locate the Trucks, the Trustee employed a private investigator. The private investigator was unable to locate the Trucks and the Trustee discontinued efforts to locate the Trucks. The BA and Trustee contend that the Debtor has failed to explain satisfactorily the loss of the Trucks, supporting a denial of discharge pursuant to 11 U.S.C. § 727(a)(5).

## DISCUSSION

A primary goal of the Bankruptcy Code is to provide the "honest but unfortunate debtor" with a fresh start by means of a discharge. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). However, debtors who "play fast and loose with their assets or with the reality of their affairs" may be denied their bankruptcy discharge pursuant to 11 U.S.C. § 727. *In re Belk*, 509 B.R. 513, 518 (Bankr. W.D.N.C. 2014). In order to prevail on an objection to discharge, the movant need only prove one ground for non-dischargeability under § 727(a). *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 250 (4th Cir. 1994) (noting that the provisions of § 727(a) are phrased in the disjunctive). The BA and Trustee contend that the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(5) and 11 U.S.C. § 727(a)(4)(A).

### *11 U.S.C. § 727(a)(5)*

Section 727(a)(5) provides that a debtor should be denied a discharge if they have "failed to explain satisfactorily… any loss of assets or deficiency of assets to meet the debtor's

5

liabilities." 11 U.S.C. § 727(a)(5). Fraud is not an element of § 727(a)(5). *CM P'ship v. Groover (In re Groover)*, No. 03-51013, Adv. No. 03-6103W, 2004 Bankr. LEXIS 2646, at *9 (Bankr. M.D.N.C. Jan. 16, 2004). When moving for a denial of discharge pursuant to § 727(a)(5), the initial burden is on the movant to produce evidence to establish the basis of the objection, that is, identify missing assets. *Powers v. Ottoson-King (In re Ottoson-King)*, 3 Fed. Appx. 147, 151(4th Cir. 2001) (internal citations omitted). Subsequently, the burden shifts to the debtor to adequately explain the loss of those assets. *Id*. The question of whether the loss of assets has been adequately explained by the debtor is a question of fact. *Id*. "The debtor's explanation must be 'reasonable and credible so as to satisfy the court that the creditors have no cause to wonder where the assets went…[and] the failure to offer documentary evidence to corroborate a debtor's testimony as to the loss or disposition of assets may justify the denial of a discharge pursuant to Section 727(a)(5).' " *Id*. (quoting *Farouki*, 133 B.R. 769, 777(Bankr. E.D. Va. 1991).

In this case, the BA and Trustee satisfied their burden of identifying missing assets: the Trucks. Further, the Debtor does not contest having owned the Trucks at the time of filing. The Debtor testified that he purchased the Trucks in July of 2020, however, the Debtor has failed to adequately explain the disposition of the Trucks. The Debtor paid $36,000.00 acquiring these Trucks in an online auction. After winning the auction, he flew to Texas to sign the paperwork and inspect the Trucks. After expending so much money and time acquiring these Trucks, they seem to have vanished into thin air with a company that seemingly does not exist. According to the Debtor's testimony, Everette & Sons had the Trucks here in North Carolina after transporting them from Texas and began the repair work, however, the Debtor does not know what happened to the Trucks after he was unable to pay Everette & Sons when they asked him to provide payment up to that point. The Debtor believes the Trucks may have been "junked" by Everette &

Sons. The Debtor has provided no documentary evidence to support his testimony that Everette & Sons transported the Trucks from Texas, that Everette & Sons began repairs on the Trucks, or that Everette & Sons "junked" the Trucks. Further, there is no evidence to show that Everette & Sons even exists. There were no invoices provided from Everette & Sons. There was no formal notice from Everette & Sons that the Trucks were to be "junked" if the Debtor was unable to pay. The address Debtor provided for Everette & Sons was a residential address to which the Trustee wrote a letter and never received a response. The phone number Debtor provided for Everette & Sons had a full voicemail inbox and no one from the company ever answered the phone when the Trustee attempted to contact them numerous times. There is no online presence for the company Everette & Sons to validate their existence. The only evidence provided in regard to this company and the disposition of the Trucks is the Debtor's testimony and even according to the Debtor's own testimony, he is unsure about what happened to the Trucks. This lack of explanation certainly leaves one to wonder about the disposition of the Trucks. As a result, the Debtor can be denied discharge pursuant to 11 U.S.C. § 727(a)(5), and the Court need not go further in considering alternate grounds.

## **CONCLUSION**

Based upon the foregoing, the Court finds that the BA and Trustee have met their burden under 11 U.S.C. § 727(a)(5) and the Debtor has failed to explain satisfactorily the loss of the Trucks. The Court shall enter a separate judgment consistent with this memorandum opinion denying the Debtor's discharge.

END OF DOCUMENT

PARTIES TO BE SERVED

William P. Miller
Bankruptcy Administrator (sent via electronic filing)

Nathan L. Strup  (sent via electronic filing)
Assistant U.S. Attorney
Middle District North Carolina
101 South Edgeworth Street 4th Floor
Greensboro, NC 27401

John Paul H. Cournoyer (via ECF)
Northern Blue, LLP
1414 Raleigh Road, Suite 435
Chapel Hill, NC 275   17

Todd A. Jones (via ECF)
Anderson Jones, PLLC
Post Office Box 20248
Raleigh, NC 27619

Matthew G. T. Martin (via ECF)
United States Attorney
Middle District of North Carolina
101 South Edgeworth Street, 4th Floor
Greensboro, NC 27401

Christopher Lavon Vereen (sent U.S. Mail)
4600 University Drive, Apt. 1309
Durham, NC 27707

Robert Lewis, Jr.
P.O. Box 1446
Raleigh, NC 27602